UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-12194-RWZ


VICTOR G. DRAGONE, JR.

v.

PNC BANK, NATIONAL ASSOCIATION and
HSBC BANK USA, as Trustee for GSAA HET 2005-15

<u>MEMORANDUM OF DECISION</u>

June 7, 2013


ZOBEL, D.J.

Plaintiff Victor G. Dragone, Jr. has sued defendants PNC Bank, National

Association ("PNC") and HSBC Bank USA, National Association ("HSBC") to prevent

them from foreclosing on his home. Defendants now move for summary judgment.

**I.     Background**

In 2005, Dragone obtained a loan for $307,000, identified by a loan number

ending in 5859, from First Independent Mortgage, LLC ("First Independent"). The loan

was secured by a mortgage on Dragone's home at 34 Stuart Street in Everett,

Massachusetts. The promissory note governing the loan required monthly payments

until the loan was fully repaid, or until it reached maturity in 2035 when the entire

balance comes due.

In 2006, First Independent assigned Dragone's mortgage to National City Bank

of Indiana. That entity then assigned the mortgage to its subsidiary National City

Mortgage Co. The mortgage and its subsequent assignments were properly recorded. National City Mortgage Co. subsequently merged with and into National City Bank ("National City"), which became the holder of the mortgage by operation of law. <u>See</u> 12 U.S.C. § 215a(e).

Dragone encountered financial difficulties in 2008, and defaulted on his monthly loan payment due January 1, 2009. He has made no payments on his loan since then.

Defendants claim that on February 19, 2009, National City sent Dragone a letter ("the February 19, 2009 letter") giving him notice of his default and his right to cure that default within 90 days. Dragone claims he never received that letter. In any case, the balance of the loan was not accelerated and foreclosure proceedings were not initiated within 90 days after that notice.

In November 2009, National City merged with and into PNC, which in turn became holder of the mortgage by operation of law. PNC then assigned the mortgage to HSBC, as trustee for GSAA HET 2005-15 (which is apparently a securitization trust). That assignment was properly recorded.

On November 16, 2010, PNC sent Dragone a letter ("the November 16, 2010 letter") regarding a loan ending in 4129.         That letter informed Dragone that his loan servicing was being transferred to Specialized Loan Servicing, LLC. Dragone sent a fax to PNC inquiring about this change, but received no response.

On April 8, 2011, PNC sent Dragone a letter ("the April 8, 2011 letter") via certified mail giving him notice of his ongoing default and his right to cure that default within 150 days. That letter identified PNC rather than HSBC as the mortgagee. The

balance of the loan again was not accelerated and foreclosure proceedings were not initiated within 150 days after that notice.

Although Dragone has made no payments on his loan since January 2009, the papers filed indicate that no foreclosure sale has yet been held.

## II.    Legal Standard

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of explaining the basis for its motion and pointing out the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, the nonmovant must then produce admissible evidence showing that material facts remain in dispute; in particular, the nonmovant must have evidence supporting the existence of all essential elements on which he will bear the burden of proof at trial. Id. at 322-23. The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Id. at 248.

## III.    Analysis

Dragone's complaint is divided into six counts; however, several counts can be read to raise multiple theories of liability.

### A.    Count 1

Dragone begins this count by asserting that PNC violated section 6 of the Real

3

Estate Settlement Procedures Act ("RESPA"), codified at 12 U.S.C. § 2605. Under that statute, "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." Id. § 2605(b)(1).

Dragone claims PNC failed to notify him that it remained his loan servicer after it assigned his mortgage to HSBC. But that failure does not violate 12 U.S.C. § 2605. The statute only prohibits a servicer from assigning the servicing of a loan without notification; it does not prohibit a servicer from assigning the mortgage but retaining the servicing without notification. See Newcomb v. Cambridge Home Loans, Inc., 861 F. Supp. 2d 1153, 1161 (D. Haw. 2012) ("RESPA . . . does not govern notice requirements where a note or mortgage is transferred.").[1] PNC is therefore entitled to summary judgment here.

Second, Dragone asserts that although PNC describes itself in the April 8, 2011 letter as his mortgagee, he has never been presented with any documentation that PNC is the current holder of his mortgage and note. He describes this as a violation of Mass. Gen. Laws ch. 244, § 14 and Mass. Gen. Laws ch. 183, § 21, two statutes which describe a mortgagee's statutory power of sale. Defendants concede that PNC is not the current holder of Dragone's mortgage. If PNC did foreclose on Dragone's property without holding the mortgage or being otherwise authorized, that foreclosure would be void. See U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 50-51 (Mass. 2011). But as it

---

[1] Dragone does not advance any claim under 12 C.F.R. § 226.39, a regulation that under some circumstances requires a creditor to notify a debtor when transferring ownership of the underlying debt. Because the parties have not discussed whether that regulation is applicable, I do not consider it.

appears no foreclosure sale has been held, there is nothing to void. PNC is therefore entitled to summary judgment on this claim.

Third, Dragone asserts that PNC informed him in the November 16, 2010 letter that the servicing of his loan was transferred to Specialized Loan Servicing, LLC. That letter was apparently sent to Dragone in error; it referred to a loan with a loan number ending in 4129, whereas Dragone's loan number ended in 5859. Dragone does not explain why he believes this error entitles him to any relief.

Fourth, Dragone notes that PNC failed to respond to his inquiry regarding the November 16, 2010 letter. Dragone may have intended that allegation to state a claim under 12 U.S.C. § 2605(e), which requires servicers to respond to qualified written requests. If so, PNC is still entitled to summary judgment on that claim, because Dragone has failed to adduce evidence showing either actual damages or a pattern or practice of noncompliance as required by 12 U.S.C. § 2605(f)(1).

Finally, Dragone concludes Count 1 by asserting that PNC "has no legal standing in this entire matter and is not a proper party." Docket # 1, Ex. B (Compl.) ¶ 59. But PNC has standing in this civil suit as a defendant against whom Dragone seeks damages. If Dragone means to assert that PNC has no standing to bring a future foreclosure proceeding, that question is not ripe for judicial decision at this time.

## B.    Count 2

In Count 2, Dragone begins by asserting that PNC violated a duty of good faith and fair dealing by refusing to discuss any commercially reasonable alternatives to foreclosure. The implied covenant of good faith and fair dealing, made implicit by

Massachusetts law in every contract, provides that neither party may do anything to injure the right of the other party to benefit from the contract. Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Rests. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004). Here, the only contracts in the record are the note and mortgage on Dragone's loan. Neither of those contracts requires PNC to provide commercially reasonable alternatives to foreclosure. Nor has Dragone presented evidence that the intended and agreed expectations of the parties should require PNC to provide such alternatives. As such, PNC is entitled to summary judgment on this claim.

Dragone also alleges that PNC's failure to provide commercially reasonable alternatives to foreclosure violates two supplemental directives issued by the Department of the Treasury as part of the Home Affordable Modification Program ("HAMP"), namely Supplemental Directives 09-02 and 10-09. Of course, there is no private right of action to enforce HAMP directives. Speleos v. BAC Home Loans Servicing, 755 F. Supp. 2d 304, 311 (D. Mass. 2010). And Dragone cannot claim that the HAMP directives were implicitly incorporated into his note and mortgage, because the note and mortgage were executed before the HAMP directives issued. As such, Dragone cannot premise a breach of the implied covenant of good faith and fair dealing on the asserted HAMP violations. See id. at 311-12; Uno Rests., 805 N.E.2d at 966

("[T]he covenant of good faith and fair dealing does not serve to impute greater rights or impose impractical duties not contemplated in the contractual relationship . . . .").

Moreover, it is not clear from the complaint or from any subsequent briefing why Dragone believes PNC's actions violated the supplemental directives he cites. Supplemental Directive 09-02 addresses the collection of borrower-related data under the HAMP program; Supplemental Directive 10-09 announces the publication of a new handbook for servicers. See Program Guidance, Home Affordable Modification Program, https://www.hmpadmin.com/portal/programs/guidance.jsp (last visited June 4, 2013). Neither has obvious application to Dragone's claims.

Dragone refers in the same count to Mass. Gen. Laws ch. 244, § 35A. That statute forbids a mortgagee from foreclosing on a mortgage within 150 days after issuing a notice of default, unless the mortgagee certifies that it has made a good faith effort to negotiate a commercially reasonable alternative to foreclosure. Id. §35A(b)-(c), (f)-(h). It does not broadly require that all mortgagees must try to negotiate a commercially reasonable alternative to foreclosure. Instead, it only imposes that requirement on mortgagees who seek to foreclose within 150 days after issuing a notice of default. Id. § 35A(b). Dragone has presented no evidence that PNC attempted to foreclose on his property within 150 days after issuing a notice of default; therefore, he has not shown that PNC violated Mass. Gen. Laws ch. 244, § 35A by failing to discuss commercially reasonable alternatives to foreclosure.

Finally, Dragone declares that any actions taken by PNC to foreclose on his property are "null and void" because PNC is not the current holder of his note and

mortgage. Compl. ¶ 64. As described above, PNC has not foreclosed on Dragone's property.[2] It thus is not clear what actions Dragone seeks to void.

One possible interpretation is that Dragone believes the April 8, 2011 letter was not an effective notice of default under Mass. Gen. Laws ch. 244, § 35A(g)-(h), because it incorrectly identified PNC rather than HSBC as the mortgagee. See id. § 35A(h)(4) (requiring the notice of default to identify "the name and address of the mortgagee, or anyone holding thereunder"). The law is presently unclear on whether that error makes the notice of default ineffective. Compare Courtney v. U.S. Bank, Civil Action No. 12-12181-NMG, 2013 WL 452941, at *2 (D. Mass. Feb. 6, 2013) (finding a notice of default effective although it identified the original lender incorrectly), with Ibanez, 941 N.E. 2d at 49-50 (statutory terms regarding foreclosure must be strictly complied with).[3] If defendants do foreclose on Dragone's property and rely on the April 8, 2011 letter as their notice of default, Dragone may challenge that notice of default in a wrongful foreclosure action. Cf. Bean v. Bank of N.Y. Mellon, Civil Action No. 12-10930-JCB, 2012 WL 4103913, at *5-6 (D. Mass. Sept. 18, 2012) (considering a possible wrongful foreclosure claim under Mass. Gen. Laws ch. 244, § 35A). Because that putative action is not before me, I express no opinion on its possible merits.[4]

---

[2] For that reason, Dragone again has not shown any violation of Mass. Gen. Laws ch. 244, § 14 and Mass. Gen. Laws ch. 183, § 21.

[3] Contrary to defendants' position, the debate is not resolved by Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118 (Mass. 2012). Eaton held that the statutory term "mortgagee" in Mass. Gen. Laws ch. 244, § 14 means a person who not only holds the mortgage, but also holds the note (or acts on behalf of the noteholder). See id. at 1130-31. Here, by contrast, the question is whether Mass. Gen. Laws ch. 244, § 35A(h)(4) requires the notice of default to identify the mortgagee rather than an agent of the mortgagee. Eaton does not speak to that question.

[4] Of course, defendants can easily avoid further litigation on this point by simply issuing a new, accurate notice of default, and then relying on that new notice rather than the April 8, 2011 letter.

### C.    Count 3

Although entitled "Fraud," Count 3 of the complaint apparently sets out a claim under Mass. Gen. Laws ch. 93A for unfair or deceptive business practices. To support that claim, Dragone alleges that PNC failed to respond to Dragone's written request for certain documentation regarding his loan. He asserts this conduct violated HAMP Supplemental Directive 10-09, and also Mass. Gen. Laws. ch. 244, § 35A.

To prove a Chapter 93A claim, Dragone must show that PNC's conduct fell "within at least the penumbra of some common-law, statutory, or other established concept of unfairness." Figueroa v. Fed. Nat'l Mortg. Ass'n, Civil Action No. 12-11290-RWZ, 2013 WL 2244348, at *5 (D. Mass. May 20, 2013) (quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). Here, despite Dragone's assertions, it does not appear that PNC violated Mass. Gen. Laws. ch. 244, § 35A by failing to send him the documentation he requested; that statute only requires a creditor to provide such documentation if it seeks to foreclose less than 150 days after sending a notice of default. See Mass. Gen. Laws. ch. 244, § 35A(b)-(c). As for Dragone's assertion that PNC violated HAMP Supplemental Directive 10-09, it is again unclear how Dragone believes PNC violated that directive. And even if PNC had breached a HAMP regulation, such a violation "does not automatically give rise to a Chapter 93A claim." Morris v. BAC Home Loans Servicing, 775 F. Supp. 2d 255, 259 (D. Mass. 2011). The plaintiff must additionally show that the violation at issue was itself unfair or deceptive. In this case, Dragone has not produced any evidence to show that PNC's failure to produce the loan documentation was unfair or deceptive. See Kozaryn v.

9

Ocwen Loan Servicing, 784 F. Supp. 2d 100, 103 (D. Mass. 2011) ("Without further factual detail demonstrating unfairness, as opposed to clerical error or mere negligence, [a] claim for a violation of Chapter 93A cannot be sustained."). And Dragone also has not put forward any evidence that he was damaged by PNC's failure to respond to his request, which independently dooms his claim. See Markle v. HSBC Mortg. Corp., 844 F. Supp. 2d 172, 185 (D. Mass. 2011) (noting that a Chapter 93A plaintiff must show he "suffered a loss of money or property" (quoting Morris, 775 F. Supp. 2d at 259)).

To the extent Dragone seeks to assert a Chapter 93A claim against PNC based on the entire course of PNC's conduct, that claim also fails. The record reflects a number of alleged misdeeds by PNC, including: (1) the November 16, 2010 letter incorrectly informing Dragone that his loan servicing had been transferred, and the failure to respond to Dragone's inquiry regarding that letter; (2) the April 8, 2011 letter incorrectly identifying PNC as the mortgagee; (3) the failure to notify Dragone that his loan servicing was not transferred when his mortgage was; (4) the failure to negotiate a commercially reasonable alternative to foreclosure;[5] and (5) the failure to respond to Dragone's request for documentation. As to the two letters, Dragone has not produced any evidence sufficient to show that PNC's errors were intentionally deceptive rather than merely negligent.  See Kozaryn, 784 F. Supp. 2d at 103. As to the rest of PNC's conduct, Dragone has failed to show that it falls within any recognized concept of

---

[5] Included in this category are Dragone's allegations in his verified complaint that he was denied a loan modification for several months because he was unemployed; that he was offered a putative loan modification that he could not possibly afford; and that PNC did not respond further to his questions after he was offered a trial modification.

unfairness. See PMP Assocs., 321 N.E.2d. at 917-18. Finally, Dragone has failed to

produce evidence showing damages from any of PNC's conduct, except possibly the

failure to negotiate a commercially reasonable alternative to foreclosure. Even

construing Dragone's Chapter 93A claim to challenge all of PNC's conduct,  it cannot

survive summary judgment.

### D.      Count 4

In Count 4, Dragone asserts that HSBC has not demonstrated that it is the

current holder of his mortgage. In response, HSBC has submitted an affidavit

recounting how the mortgage passed into its hands, along with the various recorded

assignments. Dragone has produced no evidence to rebut that chain of title, and

apparently does not contest it. To the extent Dragone ever asserted a viable legal claim

in this count, then, HSBC is entitled to summary judgment on that claim.

As described above, HSBC has not yet foreclosed upon Dragone's property. If

and when it does, it presumably will have to demonstrate that it either holds Dragone's

note or is acting on behalf of the note-holder. See Eaton v. Fed. Nat'l Mortg. Ass'n, 969

N.E.2d 1118, 1129-31 (Mass. 2012). That issue, however, is not presently before me.

### E.      Count 5

Count 5 of the complaint is styled as a fraud claim against HSBC. Dragone

begins this count by alleging that HSBC filed a copy of the February 19, 2009 letter

with the Massachusetts Land Court, and that the copy filed "is fraudulent in that: it was

neither sent to nor received by [Dragone]; it is not written on official stationary [sic]; the

sender is unknown; it is unsigned; and there [are] deliberate and intentional black

11

marker cross-outs of vital information on the face of the document." Compl. ¶ 82. He

has also submitted a copy of the offending document. Compl. Ex. 20. However, these

allegations and this evidence do not support a cognizable claim of fraud. To show

fraud, Dragone must prove that HSBC made a false representation of material fact, and

that he reasonably relied on that false representation to his detriment. Taylor v. Am.

Chem. Council, 576 F.3d 16, 31 (1st Cir. 2009). Nothing in Dragone's allegations or on

the face of the document submitted shows that HSBC made any false representation in

the February 19, 2009 letter. Moreover, there is no evidence that Dragone relied on

any false representation by HSBC to his detriment. Indeed, Dragone alleges he never

received the February 19, 2009 letter, meaning he cannot have relied on it. HSBC is

therefore entitled to summary judgment on the fraud claim.

    To the extent Dragone simply argues that the February 19, 2009 notice of

default was ineffective, he has failed to raise any genuine issue of material fact. Under

the version of Mass. Gen. Laws ch. 244, § 35A in effect when the letter was sent, a

notice of default was deemed delivered "when mailed to the mortgagor at the

mortgagor's address last known to the mortgagee or anyone holding thereunder." Act

Protecting and Preserving Home Ownership, ch. 206, § 11, 2007 Mass. Acts 719, 722

(2007) (amended 2010). HSBC has submitted a copy of the February 19, 2009 letter

addressed to Dragone at 34 Stuart Street in Everett, Massachusetts; it has also

submitted an affidavit attesting that the letter was sent to that address on that date. The

letter appears to comply with all of the then-applicable statutory requirements.

Dragone's assertion that he never received the letter is not enough to create a genuine

issue of material fact as to whether it was properly sent. See Bank of N.Y. Mellon Corp. v. Wain, Misc. Action No. 12-459002-AHS, 2012 WL 5475849, at *8-9 (Mass. Land Ct. Nov. 9, 2012). In any case, as HSBC has not relied on this letter to foreclose on Dragone's property, it is not clear what relief Dragone seeks on this claim.

Dragone also asserts in Count 5 that HSBC failed to offer him any commercially reasonable alternative to foreclosure. He again describes that failure as a violation of HAMP Supplemental Directives 09-02 and 10-09, and also of Mass. Gen. Laws ch. 244, § 35A. As above, Dragone has not explained how his evidence shows a violation of either the state statute or the federal directives he cites.

Finally, Dragone relies on all of the allegations above to assert a Chapter 93A claim against HSBC. Like Dragone's Chapter 93A claim against PNC, that claim cannot survive summary judgment because Dragone has not produced evidence showing that HSBC's actions fell within any established concept of unfairness. See PMP Assocs., 321 N.E.2d. at 917-18.

### F.    Count 6

The last count of the complaint alleges that HSBC breached a duty of good faith and fair dealing by refusing to discuss commercially reasonable alternatives to foreclosure. Here as above, Dragone has failed to produce evidence that the note, the mortgage, or any other contract explicitly or implicitly required HSBC to offer commercially reasonable alternatives before foreclosing. He has therefore failed to show any breach of the implied covenant of good faith and fair dealing. Likewise, for the reasons described above, he has failed to show any actionable violation of HAMP

13

Supplemental Directives 09-02 and 10-09, Mass. Gen. Laws. ch. 93A, or Mass. Gen. Laws ch. 244, § 35A.

## IV.   Conclusion

Defendants' motion for summary judgment (Docket # 26) is ALLOWED.

Judgment shall enter accordingly.

|  |  |
|---|---|
| _____June 7, 2013_____ | _____/s/Rya W. Zobel_____ |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |